# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| KELLY FAMIGLIETTI | : CIVIL ACTION NO.: 3:11-CV-01792 (RNC) |
| Plaintiff, | : |
| | : |
| v. | : |
| | : |
| HARTFORD HOSPITAL | : |
| | : |
| Defendant. | : FEBRUARY 25, 2013 |

## MEMORANDUM OF LAW IN SUPPORT
## OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

On June 30, 2011, plaintiff Kelly Famiglietti was injured while at work.  At that time, Ms. Famiglietti was not eligible for leave under the Family Medical Leave Act ("FMLA") or Hartford Hospital's own Extended Illness Leave fringe benefit program. Despite having no authorized leave available to her, the Hospital allowed Ms. Famiglietti to remain out of work until September 14, 2011--a period of over ten weeks.  As of that date, Ms. Famiglietti was not able to return to work, had not provided the Hospital with any anticipated return-to-work date, and had no leave available.  Therefore, Ms. Famiglietti was terminated pursuant to the Hospital's neutrally-applied Leave of Absence policy, which provides that "employment is terminated after all leave is expired or after 12 months of leave, whichever comes first."

Ms. Famiglietti cannot present any evidence that shows that she was entitled to any additional leave, or that she was exempt from the clear language of the Hospital's Leave of Absence policy. As such, Ms. Famiglietti cannot demonstrate that she was terminated because of her receipt of workers' compensation benefits or her exercise of any rights under the Connecticut Workers' Compensation Act, Conn. Gen. Stat. § 31-275 *et seq.* ("the Act").  As

2665059

such, the Hospital is entitled to judgment as a matter of law on Ms. Famiglietti's one-count

Amended Complaint, which sets forth a retaliation claim under Conn. Gen. Stat. § 31-290a.

## I. LEGAL STANDARD FOR A MOTION FOR SUMMARY JUDGMENT.

### A. General standards applicable to a motion for summary judgment.

"The standards governing summary judgment are well-settled." Ford v. Reynolds, 316

F.3d 351, 354 (2d Cir. 2002). Summary judgment is appropriate if, after discovery, the

nonmoving party "has failed to make a sufficient showing on an essential element of [its] case

with respect to which [it] has the burden of proof." Celotex Corp. v. Catrett, 477 U.S. 317,

323 (1986). "The party seeking summary judgment has the burden to demonstrate that no

genuine issue of material fact exists." Ford, 316 F.3d at 354. "[T]he burden on the moving

party may be discharged by 'showing' - that is pointing out to the district court - that there is

an absence of evidence to support the nonmoving party's case." PepsiCo. Inc., v. Coca-Cola

Co., 315 F.3d 101, 105 (2d Cir. 2002) (internal citations omitted). "If the party moving for

summary judgment demonstrates the absence of any genuine issue as to all material facts, the

nonmoving party must, to defeat summary judgment, come forward with evidence that would

be sufficient to support a jury verdict in its favor." Burt Rigid Box, Inc. v. Travelers Prop.

Cas. Corp., 302 F.3d 83, 91 (2d Cir. 2002). While evidence produced by the party opposing

summary judgment need not be in a form that would be admissible at trial, its content must

nonetheless be admissible. Santos v. Murdock, 243 F.3d 681, 683 (2d Cir. 2001).

### B. Motions for summary judgment are appropriate in § 31-290a claims.

"At summary judgment in an employment discrimination case, a court should examine

the record as a whole, just as a jury would, to determine whether a jury could reasonably find

an invidious discriminatory purpose on the part of an employer." Byrnie v. Town of Cromwell Bd. of Educ., 243 F.3d 93, 102 (2d Cir. 2001). It "is now beyond cavil that summary judgment may be appropriate even in the fact-intensive context of discrimination cases . . . . The salutary purposes of summary judgment — avoiding protracted, expensive, and harassing trials — apply no less to discrimination cases than to . . . other areas of litigation." Abdu-Brisson v. Delta Air Lines, Inc., 239 F.3d 456, 466 (2d Cir. 2001) (citing Meiri v. Dacon, 759 F.2d 989, 998 (2d Cir. 1985)). Put more simply, "[t]rial courts should not treat discrimination differently from other ultimate questions of fact." Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 148 (2000).

In accordance with these legal principles, judges in state and federal courts routinely grant employers' motions for summary judgment in § 31-290a cases. See, e.g., Tejada v. Wal-Mart Stores, Inc., 2009 U.S. Dist. LEXIS 26001, at *16-22 (D.Conn., Mar. 30, 2009)(Thompson, J.) (attached as Exhibit A) ("Tejada has failed to create a genuine issue of fact as to whether Wal-Mart 'discriminated against [him] for exercising [his] right' under § 31-290"); Martin v. Town of Westport, 2007 Conn. Super. LEXIS 158 (Conn. Super. Ct., Jan. 17, 2007)(Tobin, J.)(grating employer's motion for summary judgment in a § 31-290a case)(Exhibit B).[1] As one treatise noted, "[b]y and large, 31-290a claims have been difficult to

---

[1] An employee who believes that he or she has been retaliated against due to his or her exercise of any rights has two options under the Act: (1) file a § 31-290a claim in the Superior Court; or (2) file a § 31-290a claim with the Workers' Compensation Commission. If an employee chooses the latter option, the employee will receive a hearing before a Commissioner. Either party can then appeal any adverse final ruling to the Connecticut Appellate Court. See, e.g., Erisoty v. Merrow Machine Co., 34 Conn. App. 708, 713 (1994)(affirming Commissioner's ruling in favor of an employer on a § 31-290a claim). In this case, Ms. Famiglietti, a resident of Massachusetts, filed a lawsuit in the Connecticut Superior Court, which the Hospital removed to the District Court for the District of Connecticut based on the diversity of citizenship of the parties.

prove and most have resulted in dismissals or judgment for the defendant-employer." *Workers'*
*Compensation Law*, § 26:7, pg. 78 (Conn. Prac. Series, Vol. 19A).

## II.   FACTUAL BACKGROUND:

   A.   Ms. Famiglietti's employment at the Hospital.

   On or about February 7, 2011, Ms. Famiglietti was hired by the Hospital as a
registered nurse for CB4, which is a joint replacement unit. (Statement of Facts ¶ 1).  Patients
in that unit have undergone joint replacement surgery, and, as a result, are either immobile or
have significant mobility issues. Therefore, nurses on CB4 are required to provide physical
assistance to the patients. Id. ¶ 2. After her orientation period was completed, Ms. Famiglietti
worked 24 hours per week (either three eight-hour shifts or two twelve-hour shifts) on the
night shift. Id. ¶ 3.  Before starting her employment on CB4 in February 2011, Ms.
Famiglietti had worked at the Hospital during three different time periods in the past.  In
February 2011, Ms. Famiglietti looked forward to returning to the Hospital because it is a
good employer. Id. ¶ 4,

   B.   Ms. Famiglietti's June 30, 2011 workplace injury.

   On June 30, 2011, Ms. Famiglietti injured her back at work when assisting a patient.
Id. ¶ 5. Angie Fleig is the Nurse Manager on CB4. Id. ¶ 1. Ms. Fleig told Ms. Famiglietti to
document the injury on the appropriate computer program, and then go to Occupational
Health, which is the department of the Hospital that provides health care treatment to injured
workers. Id. ¶ 6. Ms. Famiglietti was seen in Occupational Health by APRN Shawn Ladda.

Ms. Ladda took Ms. Famiglietti out of work at that time, and referred her for physical therapy. Id. ¶ 7.

In July 2012, after Ms. Famiglietti continued to experience pain and discomfort, Ms. Ladda referred Ms. Famiglietti to Dr. Monti, a private physician. Id. ¶ 8. Pursuant to Dr. Monti's orders, Ms Famiglietti remained out of work until August 4, 2011, when he cleared Ms. Famiglietti to return to light-duty work.  More specifically, Dr. Monti cleared Ms. Famiglietti to return for four-hour shifts, with restrictions against lifting more than 10 pounds, pushing or pulling more than 10 pounds, and bending or repetitive motions. Id. ¶ 9.

Ms. Famiglietti filed a workers' compensation claim in regard to the June 30, 2011 injury, and she received workers' compensation benefits for the entire time she was out of work. Id. ¶ 10.

C.    Ms. Famiglietti's aggravation of her workplace injury.

On August 10, 2011, Ms. Famiglietti was scheduled to return for her first four-hour shift. Id. ¶ 11. Ms. Fleig determined that, because of the physical restrictions imposed by Dr. Monti, there was no light-duty work for Ms. Famiglietti in CB4, where patients require physical assistance. Therefore, Ms. Fleig assigned Ms. Famiglietti to another unit in the same nursing cluster, North 9, which is a general trauma recovery floor. Ms. Fleig believed that Ms. Famiglietti would be able to assist patients in North 9 with routine care, which was within her light-duty restrictions. Id. ¶ 12.

On August 10, 2011, Ms. Famiglietti appeared for and worked a four-hour shift on North 9. Id. ¶ 14.  While working on that shift, Ms. Famiglietti reinjured her back. Ms. Famiglietti injured her back while performing med pass, which involves distributing

medication to patients on North 9. Id. ¶ 17.  Ms. Famiglietti was assigned that task by "Greg," the charge nurse on North 9. Ms. Famiglietti did not tell Greg that she had filed a workers compensation claim, or that she had been receiving workers compensation benefits. Id. ¶ 15. Ms. Famiglietti worked her whole four-hour shift that night on North 9. Id.

On the morning of August 11, 2011, Ms. Famiglietti called Occupational Health and spoke with APRN Ann Donohue.  Ms. Donohue took Ms. Famiglietti out of work again, and referred her to Dr. Monti for additional treatment. Id. ¶ 18. Ms. Famiglietti did not work from August 11, 2011, through September 14, 2011. Id. ¶ 39.

D.      The Hospital's employment policies.

At all relevant times, the Hospital had employment policies.  These employment policies are available to employees in the Human Resources department or via the Hospital's Intranet, which could be accessed through any Hospital computer. Id. ¶19.

In June 2011, the Hospital had a Workers' Compensation policy. The "purpose" of that policy is "[t]o identify compensation available to employed staff members who, arising out of and in the course of Hartford Hospital employment, become ill or injured." The Workers' Compensation policy does not address leaves of absences, nor provide injured employees with any leave or leave period. Id. ¶¶ 33-34.

In June 2011, the Hospital had a Leave of Absence policy. Id. ¶ 20. The Leave of Absence policy has a section addressing FMLA leave for employees. Id. ¶ 22.  Because of her brief duration of employment, Ms. Famiglietti was not eligible for FMLA leave in June 2011. Id. ¶ 23. The Leave of Absence policy has a section addressing maternity leave for employees, which is based on State law. Id. ¶ 22. Ms. Famiglietti was not pregnant in 2011, and,

therefore, was not eligible for maternity leave. Id. ¶ 25. The Leave of Absence policy also has a section addressing Extended Illness leave, which is a fringe benefit voluntarily provided by the Hospital to employees based on their length of service with the Hospital. Id. ¶ 22. Because Ms. Famiglietti had been employed for less than six months, she was not eligible for Extended Illness leave in June 2011. Id. ¶ 24.

Finally, the Leave of Absence policy contains a section addressing employees who suffer injuries at work. That section provides that "staff experiencing work-related injuries or illnesses **may** be eligible for a leave." (emphasis added). Id. ¶ 26. That section of the Leave of Absence policy does not provide any specific period of leave for employees with work-related injuries. Instead, such employees must take leave provided by another source, such as FMLA or the Hospital's Extended Illness leave fringe benefit policy. Id. ¶ 27-28. If an employee is eligible for such a leave, "[t]he length of the workers' compensation leave will not exceed the FMLA entitlement or the Extended Illness Leave entitlement, whichever is greater." Id. ¶ 29. In accordance with this policy language, the Hospital terminates employees who are unable to return to work at the end of their FMLA or Extended Illness leave--even if those employees are still receiving workers' compensation benefits. Id. ¶ 30.

Employees who are injured at work, yet who are not eligible for FMLA or Extended Illness leave, have no leave available to them under the Leave of Absence policy. The first page of the Leave of Absence policy states that, "except as required by law, no leave or combination of leaves may exceed a total of 12 consecutive months, therefore employment is terminated after all leave is expired or after 12 months of leave, whichever comes first." Id. ¶ 20. This provision does not distinguish between employees with work-related injuries and

employees with non-work-related injuries or illnesses. Id. ¶ 21. Therefore, if an employee is out of work and has no leave available, that employee can be terminated--even if the employee is receiving workers' compensation benefits. Id. ¶ 21.

    E.    <u>The termination decision.</u>

In September 2011, Ms. Fleig was discussing another employee's employment status with William Bell, the Hospital's Human Resources Consultant assigned to work with CB4. Id. ¶ 35. At that time, Ms. Fleig mentioned that she wanted to discuss another nurse (Ms. Famiglietti) with Mr. Bell.  Ms. Fleig and Mr. Bell agreed to discuss Ms Famiglietti's leave status at another time.  Id. ¶ 36.

On September 14, 2011, Ms. Fleig, Mr. Bell, Ms. Ladda, Karen Welch (Director of Occupational Health), and Celia Rodriguez (Administrative Assistant in Occupational Health), met to review Ms. Famiglietti's employment status. Id. ¶ 37. Ms. Famiglietti had started work on February 7, 2011, and was injured on June 30, 2011.  Other than one four-hour shift on August 10, 2011, Ms. Famiglietti had been out of work since June 30, 2011.  On September 14, 2011, Ms. Famiglietti had no leave available, and had no anticipated return-to-work date. Id. ¶ 39. Ms. Famiglietti's extended absence was a hardship on CB4. Id. Therefore, after consulting with Mr. Bell, Ms. Ladda, and Ms. Welch, Ms. Fleig determined that Ms. Famiglietti's employment should be terminated pursuant to the Hospital's Leave of Absence policy. Id. ¶ 40.

Mr. Bell drafted a termination letter dated September 14, 2011. Id. ¶ 41. Ms. Fleig signed the letter and mailed it to Ms. Famiglietti. Id. ¶ 42.  That letter was received by Ms Famiglietti on September 22, 2011. At that time, Ms. Famiglietti was not authorized to work,

not even on light duty status. Id. ¶ 43. After Ms. Famiglietti was terminated, she continued to receive workers' compensation benefits. Id. ¶ 46.

Although the Hospital terminated Ms. Famiglietti's employment, it noted in her personnel file that she was eligible for rehire. Id. ¶ 46. After being cleared by her physician to return to work in October 2011, however, Ms. Famiglietti never reapplied to the Hospital nor contacted the Hospital to inquire about available nursing positions.  Instead, she filed this lawsuit. Id. ¶47.

## III.   LEGAL PRINCIPLES GOVERNING A § 31-290a CLAIM.

Connecticut General Statutes § 31-290a(a) provides as follows:

> No employer who is subject to the provisions of this chapter shall discharge, or cause to be discharged, or in any manner discriminate against any employee because the employee has filed a claim for workers' compensation benefits or otherwise exercised the rights afforded to him pursuant to the provisions of this chapter.

Section 31-290a claims are analyzed under the familiar McDonnell Douglas Corporation v. Green, 411 U.S. 792 (1973) burden-shifting analysis. [2]  See Rachamkin v. Textron Inc., 1997 U.S. Dist. LEXIS 15781 at *11 (D.Conn., Sept. 17, 1997)(Goettel, J.) (applying McDonnell Douglas to § 31-290a claim)(attached as Exhibit C); Tejada, supra, 2009 U.S. Dist. LEXIS 260001 at *16-17 (same).

Under that burden-shifting analysis, the plaintiff bears the initial burden of proving by a preponderance of the evidence a *prima facie* case of discrimination.  McDonnell Douglas, 411 U.S. at 802.  In order to meet this burden, the plaintiff must present evidence that gives rise to

---

[2] Plaintiff has not identified any direct evidence that demonstrates that she was terminated because she exercised her rights under the Act.  As such, the McDonnel Douglas analysis is applicable.

an inference of unlawful discrimination.  Texas Department of Community Affairs v. Burdine, 450 U.S. 248, 252-53 (1981).

If the plaintiff meets this initial burden, the burden then shifts to the defendant to rebut the presumption of discrimination by producing evidence of a legitimate, nondiscriminatory reason for its actions. Id. at 253-55. "If the defendant carries this burden of production, the presumption raised by the *prima facie* case is rebutted, and the factual inquiry proceeds to a new level of specificity." Id. at 255.  The plaintiff then must satisfy her burden of persuading the fact finder that she was the victim of discrimination "either directly by persuading the court [or jury] that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." Id. at 256.

Although § 31-290a claims do involve questions of intent and motive, "it is well recognized that 'even with respect to questions of motive, intent and good faith, the party opposing summary judgment must present a factual predicate for his argument in order to raise a genuine issue of fact.'" Wadia Enterprises, Inc. v. Hirschfeld, 224 Conn. 240, 250 (1992). In other words, "[t]he plaintiff must present some evidence from which a trier of fact could infer that the employer discharged or discriminated against the [employee] because [he] had exercised [his] rights under the Workers' Compensation Act. . . . Without some proof of an improper motive, [a plaintiff's] case must fail." Erisoty v. Merrow Machine Co., 34 Conn. App. 708, 711 (1994).

## IV.   PLAINTIFF CANNOT ESTABLISH A PRIMA FACIE CASE UNDER § 31-290a.

The Hospital terminated Ms. Famiglietti through the neutral application of its Leave of Absence policy.  The neutral application of a leave of absence policy precludes a finding of

improper motivation. As such, Ms. Famiglietti cannot establish a *prima facie* case, and the Hospital is entitled to judgment as a matter of law.

As noted previously, "[t]he initial step in analyzing a claim under § 31-290a is to determine whether the plaintiff has established a *prima facie* case of discrimination." Mele v. Hartford, 270 Conn. 751, 769 (2004). "To establish a *prima facie* case of discrimination under § 31-290a, the plaintiff must show that [she] was exercising a right afforded [her] under the act and that the defendant discriminated against [her] for exercising that right." Diaz v. Housing Authority, 258 Conn. 724, 731 (2001). "The plaintiff must establish (a) [protected activity, i.e.,] that he filed a claim for workers' compensation benefits or otherwise exercised his rights under chapter 568 of the Connecticut General Statutes [Workers' Compensation Act]; (b) an employment action disadvantaging the plaintiff; and (c) a causal connection between the protected activity and the adverse employment action." Martin v. Town of Westport, 2007 Conn. Super. LEXIS 158 (Conn. Super. Ct. Jan. 17, 2007)(Tobin, J.)(attached as Exhibit D). "While courts have characterized plaintiff's *prima facie* burden as minimal and *de minimis* . . . that is not to say that the burden is nonexistent." Id.

In regard to the third element of a *prima facie* case, the Appellate Court has stated that "plaintiffs must present some evidence from which a trier of fact could infer that the employer discharged or discriminated against the employees because they had exercised their rights under the Workers' Compensation Act. . . . Without some proof of an improper motive, the plaintiffs' case must fail. . . ." Chiaia v. Pepperidge Farm, 24 Conn. App. at 362, 368-69 (1991) (citations omitted). The requirement that a plaintiff prove intent is necessary because, "§ 31-290a, like its counterparts in other [states'] workers' compensation schemes, does not

require an employer to retain an employee unable to perform his or her work simply because that inability resulted from a work related injury or illness." Id. Indeed, "[b]usinesses would suffer significant losses if they were prevented from filling employment vacancies after the lapse of a reasonable period of time." Id. Put more simply, "Connecticut employers are not required to create permanent jobs for injured workers." *Workers' Compensation Law*, § 26:7, pg. 79.

In accordance with these legal principals and practical considerations, a § 31-290a claim must fail when a plaintiff is discharged "solely as a result of the neutral application of [a] defendant's reasonable absence control policy. . . ." Chiaia, 24 Conn. App. at 369.

In Chiaia, the defendant had an absence control policy that "made no distinction between absences caused by work related injuries or illnesses and those absences that were not work related." Id. at 363. The two plaintiffs in that case were terminated after they suffered work-related injuries and were absent from work beyond the time allowed by the defendant's absence control policy, which in that case was twelve months. Id. After their termination, the plaintiffs filed a § 31-290a claim with the Workers' Compensation Commission. After a hearing, the presiding Commissioner found in favor of the defendants, concluding that "sole reason" the plaintiff's were terminated was the neutral application of the defendant's absence control policy.

The plaintiffs appealed to the Appellate Court, and argued that "an employer could discharge a workers' compensation claimant for a proper motive, such as a neutrally applied absence control policy, and still violate *General Statutes § 31-290a.*" The Appellate Court determined that this argument was "without merit." More specifically, the Appellate Court

concluded that, "if suitable work is not available or the employee is unable to work due to infirmity, there is no hindrance to an employer, apart from whatever contract of employment or company policy exists,[3] to discharge a workers' compensation claimant because of the neutral operation of an absence control policy." Because the employees in Chiaia could not return to work and had been out of work longer than allowed by the defendant's absence control policy, the Appellate Court concluded that the Commissioner had properly found that the plaintiffs had not established a *prima facie* case of discrimination under § 31-290a.

A similar conclusion is warranted in this case. Ms. Famiglietti was hired in February 2011, and was injured on June 30, 2011--only twenty weeks after she started her employment. Because of her short tenure at the Hospital, Ms. Famiglietti was not eligible for FMLA leave. Because of her short tenure, Ms. Famiglietti also was not eligible for Extended Illness Leave under the Hospital's own Leave of Absence policy. The Hospital's Leave of Absence Policy did not provide Ms. Famiglietti with any other leave. As such, Ms. Famiglietti simply had no leave available to her as of September 14, 2011, the day on which the termination decision was made.

In regard to leave duration, the Hospital's Leave of Absence policy provides that "employment is terminated after all leave is expired or after 12 months of leave, whichever comes first." The Hospital's policy does not distinguish between employees with work-related injuries and employees with non-work-related injuries. To the contrary, all employees are addressed equally under the Hospital's policy.

---

[3] Ms. Famiglietti has never claimed that she had an employment contract with the Hospital, and it is undisputed that Ms. Famiglietti was an at-will employee.

When Mr. Bell, Ms. Ladda, Ms. Welch, and Ms. Fleig met on September 14, 2011, they reviewed Ms. Famiglietti's status and determined that she had no leave available, could not return to work, and had no anticipated return-to-work date. They also determined that, because she had no leave available, her employment could be terminated under the Hospital's Leave of Absence policy. Thus, at the conclusion of the September 14, 2011 meeting, Ms. Fleig terminated Ms. Famiglietti's employment.

Just like the defendant in Chiaia, the Hospital has a leave policy that applies uniformly to employees injured on the job and off the job. Just like the plaintiffs in Chiaia, Ms. Famiglietti was out of leave and discharged pursuant to a neutrally-applied leave policy. Just like the plaintiffs in Chiaia, Ms. Famiglietti was not able to resume any work when discharged. For all of these reasons, therefore, just like in Chiaia, this Court should find that Ms. Famiglietti cannot establish a *prima facie* case under §31-290a. Accordingly, the Court should grant the Hospital judgment as a matter of law.

B.    The Act does not provide Ms. Famiglietti with leave.

The Hospital anticipates that Ms. Famiglietti will argue in response to this Motion that the Act provides her with leave, and that she should have been given leave beyond the September 14, 2011 date of termination pursuant to the Act. This argument must be rejected, just as it was rejected in Chiaia.

In Chiaia, the plaintiffs argued that the Act "provides an alternative time period for an absent workers' compensation claimant that may be of longer duration than an employer's twelve month absence control policy. . . ." The Appellate Court found that "unavailing," noting that "if suitable work is not available or the employee is unable to work due to

infirmity, there is no hindrance to an employer, apart from whatever contract of employment or company policy exists, to discharge a workers' compensation claimant because of the neutral operation of an absence control policy." Put more simply, the Act focuses on wage replacement for an injured worker; it does not provide injured workers with leaves of absence. This is reflected in the Hospital's Workers' Compensation policy, which notes that purpose of the policy is to "identify compensation available to" employees injured on the job.

In her deposition, Ms. Famiglietti testified that she believed she was entitled to additional leave. Ms. Famiglietti could not, however, identify the source for any additional leave. Instead, her testimony was based solely on her own personal assessment of how her employment situation should have been handled.[4] Absent any factual legal support, her claim of entitlement to additional leave is wholly speculative and fails to rebut the Hospital's contention that Ms. Famiglietti had no leave available to her at the time of her termination. As such, Ms. Famiglietti's § 31-290a claim fails as a matter of law.

## V.   HARTFORD HOSPITAL HAD A LEGITIMATE, NON-DISCRIMINATORY REASON FOR TERMINATING PLAINTIFF'S EMPLOYMENT.

As noted in Section IV of this memorandum, Ms. Famiglietti has failed to establish a *prima facie* case of discrimination under § 31-290a. Should the Court find that Ms. Famiglietti has met her minimal burden in regard to a *prima facie* case, however, the Court also should find that the Hospital has produced a legitimate, non-discriminatory ground for Ms.

---

[4] Ms. Famiglietti worked from February 7, 2011, to June 30, 2011, a period of twenty weeks. Other than one four-hour shift on August 10, 2011, Ms. Famiglietti did not work from July 1, 2011, through September 22, 2011, the day on which she received the termination notice--a period of twelve weeks. Thus, Ms. Famiglietti's absence from work was more than half as long as the time she actually worked for the Hospital.

Famiglietti's termination.  As such, the Court should find that Hartford Hospital met its burden of production under the applicable burden-shifting legal analysis.

Under the well-established legal standard, "[o]nce the complainant establishes a *prima facie* case, the employer then must produce legitimate, nondiscriminatory reasons for its adverse employment action. . . . This burden is one of production, not persuasion; it can involve no credibility assessment." Bd. of Educ. supra, 266 Conn. at 505-506 (citation omitted; internal quotation marks omitted). The employer's burden of production in this regard is "not a particularly steep hurdle. It is not a court's role to second-guess an employer's personnel decisions, even if foolish, so long as they are non-discriminatory." Hirschberg v. Bank of America, N.A., 754 F. Supp. 2d 500, 511 (E.D.N.Y. 2010).

Hartford Hospital can easily satisfy its burden of production, as the facts set forth in the Factual Background section of this Memorandum clearly set forth a legitimate, non-discriminatory reason for Plaintiff's termination:  Ms. Famiglietti was injured on June 30, 2011.  Despite not being eligible for FMLA leave or any other leave under the Hospital's Leave of Absence policy, the Hospital allowed her to remain out of work and in her in her position until August 10, 2011, when she returned on light-duty status for a four-hour shift. Ms. Famiglietti was re-injured that same day, and was again taken out of work by the Occupational Health department and then her private physician, Dr. Monti.

Despite not having any leave available, the Hospital again allowed Ms. Famiglietti to stay employed and in her position for another thirty days.  As of September 14, 2011, however, Ms. Famiglietti had not returned to work, had no leave available, and also had not given the Hospital any expected return-to-work date. Accordingly, after meeting with

representatives from the Human Resources and Occupational Health departments, Ms. Fleig

terminated Ms. Famiglietti's employment pursuant to the Hospital's Leave of Absence policy.

This constitutes a legitimate business reason for termination.  Chiaia, 24 Conn. App. at 368-69

(approving the discharge of a "workers' compensation claimant because of the neutral

operation of an absence control policy.").

**VI.    MS. FAMIGLIETTI HAS NOT IDENTIFIED ANY EVIDENCE THAT DEMONSTRATES THAT SHE WAS DISCHARGED BECAUSE OF HER RECEIPT OF WORKERS' COMPENSATION BENEFITS.**

As noted previously, "[a]fter the plaintiff has established a *prima facie* case, and the

defendant has produced evidence of a legitimate, nondiscriminatory reason for the employment

action, the plaintiff retains the burden of persuasion." Jacobs v. GE, 275 Conn. 395, 400-401

(2005).  At this stage, the McDonnell Douglas burden-shifting framework disappears, leaving

the sole remaining issue of "discrimination *vel non*." Reeves v. Sanderson Plumbing Products,

Inc., 530 U.S. 133, 143 (2000).  Thus, a plaintiff must prove that a discriminatory reason

more likely motivated defendant's actions or that defendant's proffered explanation is unworthy

of credence. Mele, supra, 270 Conn. at 753.

In this case, Plaintiff has failed to identify any evidence from which a reasonable juror

could find that Hartford Hospital's stated reason for terminating her employment was either

false or not worthy of credence, and that the termination decision was based on an improper

motive. As such, Hartford Hospital is entitled to judgment as a matter of law.

A.    There is no indirect evidence that Ms. Famiglietti was terminated because she exercised rights under the Act.

If the Court finds that Ms. Famiglietti's proffered indirect evidence of discrimination is

sufficient to meet her minimal burden at the *prima facie* stage, the Court still must grant the

Hospital judgment as a matter of law as such indirect evidence is insufficient to create a genuine issue of material fact as to whether Plaintiff was discharged "because [she] has filed a claim for workers' compensation benefits or otherwise exercised the rights afforded to [her] pursuant to the provisions of [the Act]." § 31-290a.

> i.    *Ms. Famiglietti has no indirect evidence of similarly-situated employees who were treated differently.*

In her Amended Complaint, Ms. Famiglietti alleges that Hartford Hospital "treated the Plaintiff adversely different from similarly situated employees." See Complaint ¶ 53(e). The Hospital anticipates that Ms. Famiglietti will argue that such differential treatment creates a genuine issue of material fact in regard to the Hospital's motivation for terminating her employment. Such an argument has no factual support.

The question of whether two employees are similarly situated normally is a question of fact for the jury. "This rule is not absolute, however, and a court can properly grant summary judgment where it is clear that no reasonable jury could find the similarly situated prong met." Harlen Assocs. v. Incorporated Vill. Of Mineola, 273 F.3d 494, 499 n.2 (2d Cir. 2001). A plaintiff must at least "provide an objectively identifiable basis for comparability between h[im]self and other employees" and "[c]onclusory statements that similarly situated employees outside the protected class were treated more favorably are not sufficient to defeat summary judgment." Aiello v. Stamford Hosp., 2011 U.S. Dist. LEXIS 87121, at *42 (D. Conn., Aug. 8, 2011)(Bryant, J.) (internal quotation marks omitted)(attached as Exhibit E).

"The plaintiff must also prove that he was similarly situated in all material respects to individuals with whom he compares himself and to satisfy the all material respects standard for being similarly situated, a plaintiff must show that his co-employees were subject to the same

performance evaluation and discipline standards." Id.  "[A]lthough the ultimate burden in

making a *prima facie* case is slight, the issue of whether fellow employees are similarly

situated is somewhat strict." Id. (quoting Brown v. Middaugh, 41 F. Supp. 2d 172, 184

(N.D.N.Y. 1999)).  As Your Honor noted in a prior case, employers are entitled to judgment

as a matter of law when cannot identify similarly situated employees with whom to compare

herself.  See, e.g., Fusaro v. Murphy, 2011 U.S. Dist. LEXIS 112711 at * 9 (D.Conn. 2011)

(Chatigny, J.) ("I agree with defendants that the plaintiff was not similarly situated to Zach and

Fillippino as a matter of law.")(attached as Exhibit F).

In her deposition, Ms. Famiglietti admitted that her allegation regarding similarly-

situated employees was based on her chance encounter with another Hospital employee named

"Kay" during a medical appointment. Ms. Famiglietti did not know that employee's full name,

the details of that employee's injury, whether that employee was eligible for or received

FMLA leave or Extended Leave, whether the employee ever exhausted her available leave, or

any details circumstances surrounding that employee's return to work.  In short, Ms.

Famiglietti had no knowledge of any of the facts that are necessary to support a claim that she

was similarly situated to this other employee or treated differently than this other employee.

Moreover, even assuming there was differential treatment, Ms. Famiglietti has not

demonstrated that such differential treatment was based on Ms. Famiglietti's exercise of her

rights under the Act. To the contrary, Ms. Famiglietti testified in her deposition that she

thought "Kay" had also suffered a workers' compensation injury.  Thus, if both employees

exercised rights under the Act, any differential treatment between the two cannot have been

based on Ms. Famiglietti's exercise of her rights under the Act.

For all of these reasons, Ms. Famiglietti cannot use her unsupported allegations concerning "similarly situated employees" to create a genuine issue of material fact. See, e.g., Fusaro v. Murphy, supra, 2011 U.S. Dist. LEXIS 112711 at * 9 (granting judgment as a matter of law because, among other reasons, the plaintiff could not identify employees who were similarly situated in all material respects and were treated differently from plaintiff); Martin, supra, 2007 Conn. Super. LEXIS 158 at *22 (rejecting plaintiff's attempt to claim similarly situated employees were treated differently, as plaintiff "fails to provide details as to his coworkers' duties, injuries or restrictions. . . . [m]ere conclusory allegations and assertions will not suffice to defeat a motion for summary judgment in this area of the law.").

      ii.     *The timing of Ms. Famiglietti's termination does not provide indirect evidence that she was terminated because she exercised rights under the Act.*

The Hospital anticipates that Ms. Famiglietti will argue that the time between the date on which she was injured and the date on which she was terminated is indirect evidence that she was terminated because she exercised rights under the Act. This argument should be rejected for several reasons.

As an initial matter, the Hospital notes that it is well settled that, although temporal proximity may be sufficient to meet a plaintiff's burden at the *prima facie* stage, it is not sufficient, standing alone, to meet the plaintiff's burden at the final stage of the burden-shifting analysis. See, e.g., El Sayed v. Hilton Hotels Corp., 627 F.3d 931, 933 (2d Cir. 2010) ("The temporal proximity of events may give rise to an inference of retaliation for the purposes of establishing a prima facie case of retaliation under Title VII, but without more, such temporal proximity is insufficient to satisfy appellant's burden to bring forward some evidence of

pretext."). Thus, even if the two-and-a-half month period between her injury and her termination is sufficient to raise an inference of causal connection at the *prima facie* stage, Ms. Famiglietti cannot support that temporal connection with any other evidence of improper motive. As such, the temporal period involved in this case fails to create a genuine issue of material fact.

This conclusion is bolstered when that two-and-a-half month period is considered within the facts of this case. The Federal FMLA gives employees twelve weeks of leave and job protection, and, even though she was not eligible for FMLA leave, Ms. Famiglietti was out of work for twelve weeks before she was notified of her termination on September 22, 2011. If anything, the fact that Ms. Famiglietti received the equivalent of Federal FMLA leave, even though she was not entitled to such leave, demonstrates that the Hospital treated Ms. Famiglietti fairly at all times.

Secondly, it is undisputed that, pursuant to state and federal law and the Hospital's own Leave of Absence policy, an individual who received FMLA leave may be terminated at the conclusion of that leave if he or she cannot return to work--even if that worker is receiving workers' compensation benefits.[5] Even though Ms. Famiglietti was not eligible for state or federal FMLA leave, Ms. Famiglietti apparently believes that she should have received a

---

[5] One exception to this rule is when the employee claims to be disabled and requests a period of additional leave as a reasonable accommodation under the Americans with Disabilities Act. Ms. Famiglietti has never claimed that she was disabled in 2011, or that she needed leave as a reasonable accommodation. As such, that exception is not applicable to this case.

longer period of job protection than an employee who was injured on the job and who was eligible for and received federal FMLA leave. Such a belief has no support in law or logic.[6]

Finally, as noted already in Footnote 4 of this Memorandum, Ms. Famiglietti was hired in February 2011, was injured on June 30, 2011, and received her notice of termination on September 22, 2011. Thus, Ms. Famiglietti worked for a period of 20 weeks, and then was on leave for a period of 12 weeks before she was notified of her termination. Such an extensive period of leave following such a brief period of employment thoroughly rebuts any claim that the Hospital's termination decision was based on an improper motivation. If anything, it demonstrates that the Hospital treated Ms. Famiglietti fairly at all times. As such, the time between her date of injury and her date of termination fails to raise a genuine issue of material fact, and the Hospital is entitled to judgment as a matter of law.

      iii.    *An alleged comment from Ms. Fleig is not indirect evidence that Ms. Famiglietti's termination was based on an improper motive.*

The Hospital anticipates that Ms. Famiglietti will claim that a statement from Mr. Fleig on July 1, 2011 creates a genuine issue of material fact about the Hospital's motivation for terminating her employment on September 14, 2011. Ms. Famiglietti has alleged that she was injured on the June 30, 2011 overnight shift, met with Occupational Health on the morning of July 1, 2011, and that Occupational Health took her out of work at that time. Ms. Famiglietti has further alleged that when she called Ms. Fleig to tell her about the orders from Occupational Health, Ms. Fleig stated that "I guess lifting babies is easier." Ms. Fleig has denied making that statement. Although there may now be a question of fact about whether

---

[6] Ms. Famiglietti has never claimed that she was entitled to leave under either the state or federal FMLA, and Ms. Famiglietti has not asserted a FMLA interference or retaliation claim.

Ms. Fleig made this comment, it is not a genuine issue of material fact in regard to the issue of whether Plaintiff was discharged "because [she] has filed a claim for workers' compensation benefits or otherwise exercised the rights afforded to [her] pursuant to the provisions of [the Act]." § 31-290a.

It is undisputed that Ms. Famiglietti only worked one four-hour shift between June 30, 2011, through September 14, 2011. It also is undisputed that Ms. Fleig allowed Ms. Famiglietti to remain employed yet out of work during that entire period of time even though Ms. Famiglietti was not eligible for FMLA leave or Extended Illness leave, and had no other leave available to her during this twelve-week period and therefore could have been terminated earlier than September 14, 2011. This timeline demonstrates that Ms. Fleig treated Ms. Famiglietti fairly at all times, and that any alleged comment on July 1, 2011 had no relation to or bearing on the September 14, 2011 termination decision.

This conclusion is buttressed by the fact that Ms. Fleig continued to communicate with Ms. Famiglietti in September 2011 in a manner demonstrating that she was expecting Ms. Famiglietti to return to work.  For example, Ms. Fleig emailed Ms. Famiglietti on August 19, 2011, to remind her that her Medical Risk Management course was due by September 30, 2011. Ms. Fleig then emailed Ms. Famiglietti again on August 29, 2011, with directions for the Risk Management course, and on September 6, 2011, to remind Ms. Famiglietti about the Risk Management course and that she "did not need to complete any work while you are out." These communications demonstrate that Ms. Fleig was not intending to terminate Ms. Famiglietti's employment at that time, and did not have any improper motive toward Ms.

Famiglietti at that time--as Ms. Famiglietti attempts to demonstrate through the alleged July 1, 2011 comment.

Ms. Fleig did not discuss Ms. Famiglietti's employment status until Ms. Famiglietti's name came up during Ms. Fleig's subsequent meeting with Mr. Bell about another employee. Even at that time, however, Ms. Fleig did not make any decision concerning Ms. Famiglietti's employment. To the contrary, Ms. Famiglietti's employment was not discussed until September 14, 2011, when Ms. Fleig met with Mr. Bell, Ms. Ladda, and Ms. Welch to review Ms. Famiglietti's employment status.[7] During that September 14, 2011 meeting, Mr. Bell informed Ms. Fleig that Ms. Famiglietti had no leave available, that Ms. Famiglietti could be terminated under the Hospital's Leave of Absence policy, and that such termination would not affect Ms. Famiglietti's receipt of workers' compensation benefits.  During that September 14, 2011 meeting, Ms. Ladda and Ms. Welch informed Ms. Fleig that Ms. Famiglietti was still being held out of work by her private physician and that Ms. Famiglietti had no anticipated return-to-work date. Based on her consultation with these individuals, Ms. Fleig terminated Ms. Famiglietti's employment in accordance with the Hospital's Leave of Absence policy.

In sum, Ms. Famiglietti's only evidence of improper motivation on the part of Ms. Fleig is an isolated comment that allegedly was made several months before the termination decision. The events occurring after the date of that alleged comment demonstrate that, even if true, it had no bearing on the termination decision.  In other words, any dispute about whether that comment was made is not a genuine issue of material fact. As Judge Dorsey noted when granting an employer summary judgment in a similar situation:

Plaintiff's factual evidence regarding Ms. Boston's motivations could not be weaker. When all inadmissible lay opinion testimony, conclusory allegations, and irrelevant facts are removed, it consists of a single isolated remark. There is also significant uncontroverted evidence that Defendant's decisions were not pretextual -- such as Defendant's similar treatment of younger employees and the asserted legitimate reasons for the denial of bonuses and raises--the existence of which Plaintiff has not challenged. Because Plaintiff has not offered evidence that could persuade a rational finder of fact that Defendant's reasons for denying her raises and bonuses in 2005 and 2006 were pretextual, summary judgment for Defendant is appropriate on Plaintiff's disparate treatment claim.

Timbie v. Eli Lilly and Co., 2010 U.S. Dist. LEXIS 143434 at * 41-42 (D.Conn. July 14, 2010)(Dorsey, J.)(attached as ExhibitG). Because there is no indirect evidence of improper motivation by Ms. Fleig, the Hospital is entitled to judgment as a matter of law.

      iv.    *Mr. Bell's testimony does not provide indirect evidence of discrimination nor create a genuine issue of material fact.*

As noted previously, it is undisputed that Ms. Famiglietti had no leave available at the time of her termination, and that Mr. Bell advised Ms. Fleig that Ms. Famiglietti could therefore be terminated under the Hospital's Leave of Absence policy. The Hospital anticipates that Ms. Famiglietti will claim that Mr. Bell was confused about the specifics of Ms. Famiglietti's leave at the time he spoke with Ms. Fleig, and, therefore, there is a genuine issue of material fact concerning the Hospital's motivation for terminating her employment. Such an argument must be rejected for several reasons.

As an initial matter, the Hospital notes that it is well settled that a "challenge of pretext . . . requires a court to look at the facts as they appear to the person making the decision to terminate, not the aggrieved employee." Piercy v. Maketa, 480 F.3d 1192, 1200 (10th Cir.

---

[7]Ms. Rodriguez attended that meeting, too. Ms. Rodriguez attended in an administrative capacity only, however, and was not a participant in the evaluation of Ms. Famiglietti's employment status.

2007); see also Holt v. KMI-Continental, 95 F.3d 123, 130 (2d Cir. 1996) (judgment proper for defendant when plaintiff's race and sex claims were based on her "personal belief"). Therefore, comments or actions taken by an individual who is not the decision maker do not constitute evidence of pretext. See, e.g., Halloway v. Milwaukee County, 180 F.3d 820, 825 (7th Cir. 1999) (rejecting Plaintiff's claim that "comments made by the deputy chief judge that he should retire" were evidence of discrimination, as "the comment was not made by Chief Judge Sheedy, who later made the decision to rotate [Plaintiff] into the small claims/ floater position.");

In this case, Mr. Bell met with Ms. Fleig, Ms. Ladda, and Ms. Welch on September 14, 2011 to discuss Ms. Famiglietti's employment situation.  Ms. Fleig was the Nurse Manager for CB4.  Mr. Bell provided advice and comments to Ms. Fleig during the September 14, 2011 meeting, and Ms. Fleig then made the decision to terminate.  Mr. Bell could not and did not make the decision to terminate Ms. Famiglietti. Thus, at this stage of the analysis, the Court must look at the facts as they appeared to Ms. Fleig--the individual making the termination decision.

Ms Fleig has testified that she was informed that Ms. Famiglietti was out of leave and could be terminated pursuant to the Hospital's leave of absence policy without any impact on Ms Famiglietti's workers' compensation case.  Any argument from Ms. Famiglietti about Mr. Bell's testimony is nothing more than an attempt to distract the Court from the fact that there is no evidence demonstrating that Ms. Fleig had an improper motivation toward Ms. Famiglietti.

Secondly, even if Mr. Bell was incorrect in his analysis of Ms. Famiglietti's leave status, that does not create a genuine issue of material fact in regard to the Hospital's

motivation. At this stage of the analysis, "[t]he relevant inquiry is not whether the employer's proffered reasons were wise, fair, or correct, but whether it honestly believed those reasons and acted in good faith upon those beliefs." Rivera v. City & Cnty. of Denver, 365 F.3d 912, 924-25 (10th Cir. 2004); see e.g., Sarkar v. McCallin, 636 F.3d 572, 576-577 (10th Cir. 2011) ("none of the evidence cited by Plaintiff demonstrates a genuine dispute of fact as to the relevant inquiry—whether Defendants honestly believed there were issues with his work performance and acted in good faith upon that belief."); Dickinson v. Merrill Lynch, Pierce, Fenner & Smith, 431 F. Supp. 2d 247 (D.Conn. 2006)(Hall, J.)("[T]he fact that an employer investigates an incidence of alleged employee misconduct and, in good faith, arrives at an objectively incorrect result does not show that the employer's stated reasons were a pretext for unlawful discrimination. . . .").

Mr. Bell testified in his deposition that Ms. Famiglietti's allotted leave as of June 30, 2011, was her amount of available Choice Time leave.[8] Mr. Bell further testified that, as of September 14, 2011, Ms. Famiglietti was out of Choice Time leave, and could have been terminated several weeks earlier. Because Ms. Famiglietti was not eligible for FMLA or Extended Illness leave, Mr. Bell informed Ms. Fleig that Ms. Famiglietti was out of leave, and, therefore, could be terminated under the Hospital's Leave of Absence policy. See Statement of Facts ¶ 38.

Mr. Bell was incorrect in regard to his belief that Choice Time measured how long an employee who is injured on the job could remain out of work and on leave. Choice Time is a

---

[8] Choice Time is a paid time off benefit provided by the Hospital to employees. (Tenero ¶ 33). Under that policy, which became effective on January 1, 2011, the amount of paid time off given to an employee on an annual basis depends on the employee's years of service and regularly-scheduled hours per week. (Tenero ¶ 31).

wage replacement policy; it is not a leave policy for employees injured on the job. In addition, unlike with the fringe benefits available to Hospital employees prior to January 1, 2011, employees could not use Choice Time to make up the difference between their normal Hospital pay and their workers' compensation benefit.

Even if Mr. Bell was mistaken about the applicability of Choice Time, however, he was correct in his final assessment of Ms. Famiglietti's employment status as of September 14, 2011. Put another way, Mr. Bell was correct when he advised Ms. Fleig that Ms. Famiglietti was out of leave and could be terminated under the Hospital's Leave of Absence policy. Ms. Famiglietti cannot identify any leave she was entitled to on September 14, 2011, and cannot identify any ground that precluded her from being terminated on September 14, 2011. Consequently, Ms. Famiglietti cannot demonstrate that Mr. Bell was incorrect in his final assessment of Ms. Famiglietti's employment situation.

As noted previously, in a § 31-290a case, a plaintiff "must present some evidence from which a trier of fact could infer that the employer discharged or discriminated against the employees because they had exercised their rights under the Workers' Compensation Act. . . . Without some proof of an improper motive, the plaintiffs' case must fail. . . ." Chiaia, 24 Conn. App. at 368-69. In this case, Ms. Famiglietti has no proof that Ms. Fleig did not honestly believe that Ms. Famiglietti was out of leave, that Ms. Famiglietti should be terminated under the Hospital's Leave of Absence policy, and that her termination would not impact her receipt of workers' compensation benefits. There is no evidence that Ms. Fleig had an improper motive or that Ms. Fleig terminated Ms. Famiglietti "because [she] has filed a claim for workers' compensation benefits or otherwise exercised the rights afforded to [her]

pursuant to the provisions of [the Act]." § 31-290a. Consequently, her § 31-290a claim fails as a matter of law.

B.   Ms. Famiglietti's subjective beliefs are insufficient to defeat a motion for summary judgment.

As noted previously, Ms. Famiglietti's claim that she should have been given more time to return to work before she was terminated is based entirely on her own speculation and beliefs. As also noted previously, Ms. Famiglietti's claim that she was treated differently than similarly-situated employees is based entirely on her own speculation and beliefs. The same is true for Ms. Famiglietti's general belief that she was terminated based on an improper motivation--i.e. because she had exercised her rights under the Act. This claim is based entirely on Ms. Famiglietti's speculation and beliefs. It is well settled, however, that a plaintiff's personal beliefs about the reason for an adverse employment action are insufficient to defeat summary judgment. See, e.g., Shabat v. Blue Cross Blue Shield of Rochester Area, 925 F. Supp. 977 988 (W.D.N.Y. 1996)("an employee's subjective belief that he suffered an adverse employment action as a result of discrimination, without more, is not enough to survive a summary judgment motion, in the face of proof showing an adequate non-discriminatory reason"). Because Ms. Famiglietti's speculation and beliefs are insufficient to raise a genuine issue of material fact, the Hospital is entitled to judgment as a matter of law.

VII.   CONCLUSION.

For the reasons set forth in this memorandum of law, the Court should grant Hartford Hospital's Motion for Summary Judgment, together with such further and additional relief the Court deems necessary.

THE DEFENDANT,
HARTFORD HOSPITAL


By:___ /s/ Peter J. Murphy
     Peter J. Murphy
     Federal Bar No. ct 26825
     Brenda A. Eckert
     Federal Bar No. ct00021
     Shipman & Goodwin LLP
     One Constitution Plaza
     Hartford, CT 06103
     Tel.: (860) 251-5950
     Fax: (860) 251-5315

## CERTIFICATION OF SERVICE

I hereby certify that on this 25th day of February, 2013, a copy of the **Memorandum of Law in Support of Motion for Summary Judgment** was filed electronically via operation of the Court's CM/ECF Electronic Filing System.  A Notice of Electronic Filing will be sent by e-mail to all parties via operation of the Court's CM/ECF Electronic Filing System or by mail to anyone unable to accept electronic filing as indicated on the Notice.  Parties may access this filing through the Court's CM/ECF System.


  /s/ Peter J. Murphy
Peter J. Murphy