UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| KELLY FAMIGLIETTI     Plaintiff, | : CIVIL ACTION NO.: 3:11-CV-01792 (RNC)<br>:<br>: |
| v. | :<br>: |
| HARTFORD HOSPITAL     Defendant. | :<br>: June 28, 2013 |

**REPLY BRIEF IN SUPPORT
OF MOTION FOR SUMMARY JUDGMENT**

On February 25, 2013, defendant Hartford Hospital moved for summary judgment against plaintiff Kelly Famiglietti's Amended Complaint, which asserted a single workers' compensation retaliation claim under the Connecticut Workers' Compensation Act, Conn. Gen. Stat. § 31-290a *et seq* ("the Act"). Plaintiff's May 31, 2013 Objection fails to raise a genuine issue of material fact. Indeed, the undisputed facts continue to demonstrate that Plaintiff had no leave available to her, and her employment was appropriately terminated pursuant to the Hospital's Leave of Absence Policy. This conclusion buttressed by the United States Supreme Court's June 24, 2013 decision in Univ. of Texas Southwestern Med. Center v. Nassar, 570 U.S. ___ (2013), which, as set forth below, counsels that a "but for" causation standard should be applied to retaliation claims brought under the Act. For all of the reasons set forth below and in the Hospital's previously-filed Memorandum of Law, the Hospital's Motion for Summary Judgment should be granted in its entirety.

**I.     PLAINTIFF CANNOT ESTABLISH A PRIMA FACIE CASE.**

In its Memorandum of Law, the Hospital argued that Plaintiff could not meet the third element of her *prima facie* case of retaliation--a causal connection between her workers' compensation claim and the termination of her employment. See, e.g., Michaels v. Attorney

General, Dept. of Justice, 544 F.Supp.2d 131, 139 (D.Conn. 2008)(Chatigny, J.)(granting summary judgment on a retaliation claim when no evidence of a causal connection). More specifically, the Hospital argued that it was undisputed that Plaintiff had no leave available under the Hospital's fringe benefit program, or under the Act itself. See Mem. of Law 12-15. Because she had no leave available, she was appropriately terminated under the Hospital's neutrally-applied Leave of Absence policy. See Chiaia v. Pepperidge Farm, 24 Conn. App. at 362, 368-69 (1991) (a § 31-290a claim must fail when a plaintiff is discharged "solely as a result of the neutral application of [a] defendant's reasonable absence control policy. . . ."). The Objection fails to address this argument, much less successfully rebut it. The Objection has not identified any leave that she was entitled to under the Hospital's fringe benefit program. The Objection does not argue that Plaintiff was entitled to FMLA leave. The Objection has not identified any leave that she was entitled to under the Act. Simply put, Plaintiff continues to allege that she was entitled to more leave, yet she does not identify a single source for that leave.

In fact, Plaintiff concedes that she had no leave available and could be terminated under the Leave of Absence policy, yet repeatedly argues that the Hospital's policy of terminating employees who are out of leave "violates the law." For example, Plaintiff "admits that this appears to be defendant's policy and argument but see plaintiff's memorandum of law as to why this policy violates the law." See, e.g., Local Rule 56(a)(2) Statement ¶¶ 29, 31, 38. Plaintiff also admits that the Hospital's policy "does not distinguish between employees with work-related injuries and employees with non-work related injuries or illnesses," admits that that the Hospital's policy states that "you can be terminated if you received workers'

compensation benefits and exhausted any applicable leave," yet then contends that this is an "improper statement as it is an issue of law." Id. ¶ 21.

Contrary to Plaintiff's assertion, the Objection does not contain any discussion of why the Hospital's policy violates the law. Because Plaintiff has not demonstrated that the policy violates the law, and because Plaintiff has conceded that the policy states that "you can be terminated if you received workers' compensation benefits and exhausted any applicable leave," Plaintiff cannot establish a *prima facie* case of retaliation.

Rather than address the Hospital's arguments, Plaintiff claims she can establish a prima facie case due to the temporal proximity between her injury and the termination of her employment. See Objection pgs. 12-14. This argument is a red herring designed to divert the Court's attention away from the fact that Plaintiff cannot identify any source for her claim that the Hospital was required to give her more leave and not terminate her employment pursuant to its Leave of Absence Policy--which Plaintiff has admitted is applied equally to employees with workplace injuries and employees with non-work related injuries. See Local Rule 56(a)(2) Statement ¶ 21. Temporal proximity is not relevant in this case, and Plaintiff cannot establish a *prima facie* case of retaliation. The Motion for Summary Judgment should be granted.

II. **PLAINTIFF CANNOT DEMONSTRATE THAT HER EXERCISE OF RIGHTS UNDER THE ACT WAS THE BUT FOR CAUSE OF THE TERMINATION OF HER EMPLOYMENT.**

　　A.　A heightened causal standard should apply to retaliation claims under the Act.

In her Objection, Plaintiff argued that § 31-290a claims are analyzed under the burden-shifting framework applied to federal claim under McDonnell Douglas Corporation v. Green, 411 U.S. 792 (1973). See Objection pg. 11. Plaintiff then states that under the final stage of

that framework, she needs to prove that her exercise of rights under the Act was motivating factor in the decision or that the Hospital's stated reason is unworthy of credence. Id. On June 24, 2013, however, the United States Supreme Court clarified that a heightened "but for" causation standard applies to retaliation claims brought under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. ("Title VII"). The Act has identical language to Title VII, and Connecticut courts interpret the Act in accordance with Title VII. Accordingly, this Court should apply Title VII's heightened "but for" causation standard to Plaintiff's retaliation claim, and reject the lower standard cited in the Objection.

In Ford v. Blue Cross & Blue Shield of Connecticut, Inc., 216 Conn. 40, 53, (1990), the Connecticut Supreme Court determined that the burden of proof requirements in a 31-290a action should conform to the federal standards in such cases, citing McDonnell Douglas Corporation v. Green, 411 U.S. 792 (1973) and Texas Department of Community Affairs v. Burdine, 450 U.S. 248, 252-53 (1981). Thus, as summarized in Mele v. Hartford, 270 Conn. 751, 768 (2004), Connecticut courts have borrowed from federal Title VII cases the following basic allocation of proof for claims under § 31-290a:

> The plaintiff bears the initial burden of proving by a preponderance of the evidence a prima facie case of discrimination ... In order to meet this burden, the plaintiff must present evidence that gives rise to an inference of unlawful discrimination ... if the plaintiff meets this initial burden, the burden then shifts to the defendant to rebut the presumption of discrimination by producing evidence of a legitimate, nondiscriminatory reason for its actions ... If the defendant carries this burden of production, the presumption raised by the prima facie case is rebutted, and the factual inquiry proceeds to a new level of specificity ... The plaintiff then must satisfy her burden of persuading the factfinder that she was the victim of discrimination either directly by persuading the [factfinder] ... that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence.

In regard to the third step of that analysis, in 2009 the Supreme Court concluded that under the plain language of the ADEA, an employee bringing a disparate treatment claim must prove by a preponderance of the evidence that age was the "but-for" cause of the employer's adverse action, and not merely one of the motivating factors. Gross v. FBL Financial Services, Inc., 129 S. Ct. 2343, 2351 (2009). The Court concluded that the ADEA's use of the term "because of" required a higher "but for" causal standard.

After Gross was decided, courts applied its reasoning to other statutes that used the term "because of" and did not explicitly provide for a motivating factor standard. For example, numerous circuit and district court applied Gross to ADA claims, and required ADA plaintiffs to prove "but-for" causation. See, e.g., Serwatka v. Rockwell Automation, Inc., 591 F.3d 957, 961-62 (7th Cir. 2010). Your Honor issued one such opinion. In Saviano v. Town of Westport, 2011 U.S. Dist. LEXIS 112722 (D.Conn., Sept. 30, 2011)(Chatigny, J)(attached as Exhibit B), Your Honor noted that the "retaliation provision of the ADA contains essentially the same relevant language as the ADEA." Accordingly, Your Honor found that "the but-for causation standard enunciated by the Supreme Court in Gross applies in the ADA retaliation context. Plaintiff therefore bears the burden of proving by a preponderance of the evidence that were it not for his protests of discrimination against Welch, he would not have been demoted and transferred."

On June 24, 2013, the United States Supreme Court continued the trend of extending the "but for" causal standard to other statutes. In Univ. of Texas Southwestern Med. Center v. Nassar, 570 U.S. ___ (June 24, 2013)(attached as Exhibit A), the Supreme Court was

asked to address the causation standard applicable to Title VII's anti-retaliation provision, which states in relevant part:

> It shall be an unlawful employment practice for an employer to discriminate against any of his employees. . . because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

42 U.S.C. § 2000e-3 (emphasis added). The Court noted that Title VII's use of the causal term "because" was identical to the term "because of" used in ADEA, and that the Court had already determined in Gross case that the "requirement that an employer took adverse action 'because of' age [meant] that age was the 'reason' that the employer decided to act," or, in other words, that "age was the 'but-for' cause of the employer's adverse decision." Gross, 557 U. S. at 167. Therefore, because the language in Title VII was identical to the language in the ADEA, the Court concluded that the heightened "but for" test also was applicable to Title VII retaliation claims. See Nassar, Exhibit A, pg. 11-12.

In this case, Plaintiff brings her claim under § 31-290a, which provides that no "employer who is subject to the provisions of this chapter shall discharge . . . any employee because the employee has filed a claim for workers' compensation benefits or otherwise exercised the rights afforded to him pursuant to the provisions of this chapter." (emphasis added). This causal language is identical to Title VII, which also prohibits retaliation "because" the employee engaged in protected conduct. It is well-settled that Connecticut courts interpret § 31-290a in a manner consistent with how federal courts interpret Title VII. See, e.g., Ford, 216 Conn. at 53. Thus, just as Your Honor found that Gross applied to ADA

2857714v2

6

claims, Your Honor should find that the "but for" standard recently applied to Title VII retaliation claims in Nassar also applies to retaliation claims brought pursuant to § 31-290a.

    B.    <u>Plaintiff cannot demonstrate that her exercise of rights was the "but for" cause of her termination.</u>

The "but for" causal establishes a high causal standard for plaintiffs to meet. Even if Plaintiff can meet her *prima facie* burden, Plaintiff cannot her high burden and demonstrate that her exercise of rights was the "but for" cause of her termination. Consequently, the Hospital's Motion for Summary Judgment should be granted.

Under the standard set forth in <u>Gross</u> and <u>Nassar</u>, a court must determine, "by looking at the evidence [the plaintiff] has proffered and the counter-evidence [the defendant] has presented, whether [the plaintiff] has raised sufficient evidence upon which a reasonable jury could conclude by a preponderance of the evidence that her age was a 'but for' cause" of the adverse employment action." <u>Gorzynski v. Jetblue Airways Corp.</u>, 596 F.3d 93, 105-06 (2d Cir. 2010) (quoting <u>Gross v. FBL Financial Services, Inc.</u>, 129 S. Ct. at 2351). In other words, "to defeat summary judgment [in a "but for" analysis], plaintiff must show that defendant's proffered non-discriminatory explanation for the action that it took in terminating her was pretextual and that there is no basis upon which a jury could conclude that plaintiff's termination was reasonable." <u>Meehan v. DaVita, Inc.</u>, 2010 U.S. Dist. LEXIS 133128, at * 15-16 (D. Conn. Dec. 16, 2010)(Eginton, J.)(attached as Exhibit C). Plaintiff cannot make such a showing in this case.

As noted in the Hospital's Memorandum of Law and supporting exhibits, it has a Leave of Absence policy that provides for the termination of employees who are out of leave-- regardless of whether they have filed a workers' compensation claim or not. <u>See, e.g.</u>,

Memorandum pgs. 6-9. Plaintiff "admits that this appears to be defendant's policy and argument but see plaintiff's memorandum of law as to why this policy violates the law." See, e.g., Local Rule 56(a)(2) Statement ¶¶ 29, 31, 38. Plaintiff also admits that the Hospital's policy "does not distinguish between employees with work-related injuries and employees with non-work related injuries or illnesses," admits that that the Hospital's policy states that "you can be terminated if you received workers' compensation benefits and exhausted any applicable leave." Id. ¶ 21.

   The evidence cited on pages 8 and 9 of the Hospital's memorandum demonstrates that Ms. Fleig was discussing an employee's employment status with Mr. Bell, the Hospital's Human Resources Consultant assigned to work with Plaintiff's unit, when Ms. Fleig mentioned that she wanted to discuss another nurse (Ms. Famiglietti) with Mr. Bell. On a later date, Ms. Fleig and Mr. Bell discussed Plaintiff's employment at a meeting with members of the Occupational Health department. Plaintiff had been out of work since June 30, 2011, except for one four-hour shift on August 10, 2011, and she had no anticipated return to work date. Mr. Bell informed Ms. Fleig that Plaintiff had no more available leave, and termination was therefore appropriate under the Hospital's Leave of Absence Policy. Mr. Bell drafted a termination letter dated September 14, 2011, which Ms. Fleig signed and mailed to Plaintiff.

   This evidence demonstrates that the Hospital has a Leave of Absence policy, and that it applied that policy to Plaintiff. There is no evidence that raises a genuine issue of material fact on the question of whether her workers' compensation claim was the "but for" cause of her termination. To the contrary, the evidence demonstrates that Plaintiff was terminated pursuant

to the Hospital's neutrally-applied Leave of Absence policy. As such, Plaintiff cannot meet her difficult burden, and the Hospital is entitled to judgment as a matter of law.

### III. PLAINTIFF CANNOT DEMONSTRATE THAT SHE WAS THE VICTIM OF INTENTIONAL RETALIATION.

Even if the Court finds that a "but for" causal standard is not applicable to retaliation claims brought under the Act, the Hospital still is entitled to judgment as a matter of law. In its Memorandum of Law, the Hospital identified a legitimate, non-retaliatory reason for the termination of Plaintiff's employment. See Mem. of Law 14-15; see also Bd. of Educ. of Norwalk v. CHRO, 266 Conn. 492, 505-506 (2003) (the Hospital's "burden is one of production, not persuasion; it can involve no credibility assessment."). In response, it is not enough to show pretext. Instead, the "ultimate burden" rests with Plaintiff "to establish, by a preponderance of the evidence, that the employer intentionally discriminated against [her]." Id. at 517; see also Schnabel v. Abramson, 232 F.3d 83, 88 (2d Cir. 2000) ("A jury . . . could conclude that defendants' stated reasons for firing plaintiff were pretextual. Nevertheless, plaintiff has not demonstrated that the asserted pretextual reasons were intended to mask. . . discrimination."); Bombero v. Warner-Lambert Co., 142 F.Supp.2d 196, 206 (D.Conn. 2000)(Chatigny, J.) (in order "to survive summary judgment, plaintiff has to show not only pretext, but also either use of a pretext that itself implies a discriminatory stereotype, or use of a pretext to hide age discrimination.")(alterations omitted).

In the Objection, Plaintiff claims there is an issue of fact regarding whether she was intentionally discriminated against because the Hospital's legitimate reason for termination is not credible, and because there is evidence of discriminatory animus. Plaintiff is incorrect on both grounds. Therefore, the Hospital's Motion for Summary Judgment should be granted.

2857714v2

9

A.  The Hospital's legitimate reason does not lack credibility.

Plaintiff claim that the Hospital's stated reason for termination is not credible is based on improper characterizations of evidence and the Hospital's Leave of Absence Policy.

i.  *The Hospital had a neutrally-applied Leave of Absence policy.*

Initially, Plaintiff claims that the Hospital does not have a neutrally-applied leave of absence policy. See Objection pg. 16. This argument ignores the plain language of the policy and Plaintiff's own Local Rule 56(a)(2) statement. As noted previously, Plaintiff admits that the Hospital has a Leave of Absence policy, admits that the Policy does not differentiate between employees with work-related and non-work-related injuries, and admits that the Policy states that "you can be terminated if you received workers' compensation benefits and exhausted any applicable leave." See Local Rule 56(a)(2) Statement ¶ ¶ 21, 29, 31, 38. In accordance with the Policy's plain language, the Hospital consistently terminates employee who have exhausted any applicable leave, including employees who have filed workers' compensation claims. See Declaration of Maria Tenero, ¶¶ 19-24 (attached as Exhibit C to Declaration of Peter J. Murphy, Docket # 36). It is simply absurd for Plaintiff to argue that the Hospital does not have a neutrally-applied leave of absence policy.

Ignoring the clear language of the Policy, Plaintiff argues that the Hospital did not have such a policy because the Hospital's Director of Human Resources, Beverly Sherbondy, did not know what a neutrally-applied leave of absence policy is during her deposition. The transcript makes clear, however, that Ms. Sherbondy simply was not familiar with the legal term used by Attorney Sabatini:

Q.  In 2011 did Hartford Hospital have a Neutral Absence Control Policy in place?

   A. I don't know what you mean by that.

See Sherbondy Deposition, pg. 16 (attached as Exhibit D). Moreover, Plaintiff fails to inform the Court that Ms. Sherbondy testified that the Hospital has a Leave of Absence Policy, that the Policy provides that employees on workers' compensation may be terminated if they are not eligible for FMLA or Extended Illness leave, and that the Hospital follows that policy and terminates such employees in "every case." Id. at pgs. 33-35. Thus, her testimony confirms the testimony by Ms. Tenero in the text above--that the Hospital has a Leave of Absence Policy that it applies in a neutral manner to all employees without leave.

   ii. *The Hospital applied its Leave of Absence policy to Plaintiff.*

Shifting her argument, Plaintiff next argues that the Hospital had a Leave of Absence policy (as she must), but that the policy was not applied to Plaintiff. See Objection pg. 18-19. As an initial matter, the Hospital notes the Plaintiff does not support this argument with a single citation to the record. Plaintiff's argument should be rejected on this ground alone. It also should be rejected on that ground that, as set forth in Section II above, the evidence demonstrates conclusively that Ms. Fleig made the termination decision after Mr. Bell's informed her in a meeting with members of Occupation Health that Ms. Famiglietti was out of leave, and, it was appropriate to terminate Plaintiff's employment under the Leave of Absence policy. See, e.g., Mem. of Law pgs. 8-9, 13-14. All individual's present at that meeting understood the reason for Plaintiff's termination, and Plaintiff cannot identify any evidence suggesting that the fact that she had exercised rights under the Act played any role in that decision.

When applying that Policy, the Hospital did not "blame" the Plaintiff, as argued on pages 18 and 19 of the Objection. To the contrary, the Hospital simply noted that, at the time of her termination on September 14, 2011, Plaintiff had been out of work since June 30, 2011, except for one four-hour shift in August, and had no anticipated return-to-work date. This is undisputed. The Hospital's reference to a lack of a return to work date at time of Plaintiff's termination does not raise a genuine issue of material fact in regard to intentional retaliation.

   iii. *The Hospital followed its Leave of Absence Policy.*

Shifting her argument once again, Plaintiff next argues that the Hospital failed to follow its own Leave of Absence policy. This argument demonstrates that Plaintiff has a fundamental misunderstanding of the Hospital's Leave of Absence policy. In its Memorandum of Law, the Hospital explained how the application of the Leave of Absence policy depends on the leave available to a particular employee. See Mem. of Law pgs. 6-8. The Hospital will not repeat that full analysis here. It does note, however, that some employees injured at work will be eligible for FMLA leave and then the Hospital's Extended Illness Leave. If an employee takes FMLA leave, but is unable to return at the conclusion of that FMLA leave, the employee will go on Extended Illness Leave if available. That individual's position will be filled at the conclusion of the FMLA leave, yet the individual will remain an employee until the end of the Extended Illnesses Leave--when the employee must either find an available position or be terminated. See Objection, Exhibit 4, Leave of Absence Policy, pg. 7 and 8 of 13.

The section of the Leave of Absence Policy cited on page 20 of the Objection simply reiterates how that scenario would apply to an individual who is receiving workers' compensation payments. Contrary to Plaintiff's argument, this language does not create a

procedure that the Hospital was required to follow in regard to Plaintiff's employment. Plaintiff was not eligible for FMLA or Extended Illness Leave, and that section of the policy is not applicable to Plaintiff. This argument, therefore, fails to raise a genuine issue of material fact in regard to intentional discrimination.

      B.    <u>There is no evidence of discriminatory animus.</u>

In a second attempt to save her Complaint from summary judgment, Plaintiff argues that statements by Hospital employees demonstrate a discriminatory animus. This argument is misguided, as it takes quotes out of context, gives quotes inflated importance, and improperly attaches certain quotes to unrelated employment actions. Put more simply, Plaintiff has failed to raise a genuine issue of material fact in regard to an alleged discriminatory animus.

Plaintiff first points to an alleged comment by Ms. Fleig about "lifting babies" as evidence of discriminatory animus. <u>See</u> Objection pg. 21. As already noted in the Hospital's Memorandum of Law, Ms. Fleig denies making this statement, and, even if she did make it, the substance of that statement does not raise a genuine issue of material fact in regard to whether Plaintiff was discharged several months later "because [she] has filed a claim for workers' compensation benefits or otherwise exercised the rights afforded to [her] pursuant to the provisions of [the Act]." Conn. Gen. Stat. § 31-290a. This is especially true given the undisputed facts set forth on pages 23 and 24 of the Hospital's Memorandum of Law, which demonstrate that Ms. Fleig treated Plaintiff fairly at all times after that alleged statement.

Plaintiff also alleges that Ms. Fleig stated the following after being informed Plaintiff could only return on a four-hour shift: "What do you mean? You work twelve hour shifts," and "I am not sure what hours you will work; I will do what is best for me." <u>See</u> Objection

pg. 22. This argument fails to demonstrate a discriminatory intent for several reasons. As an initial matter, the alleged quote from Ms. Fleig is not consistent with Plaintiff's deposition testimony, where she alleged that Ms. Fleig said "What do you mean four hours? Your work 12 hours," and that Ms. Fleig then replied to Plaintiff's request for information about what hours she would work by stating "I have no idea. I have to do what is best for <u>the unit</u>." See Famiglietti Deposition, pg. 62 (attached as Exhibit E)(emphasis added). Even if made, a statement addressing a scheduling issue with comments about doing what is best for "the unit" falls well short of the level necessary to demonstrate retaliatory intent by Ms. Fleig.

Moreover, as Plaintiff conceded in her deposition, Ms. Fleig ultimately assigned Ms. Famiglietti to the earliest four-hour block available, which was beneficial to Plaintiff:

> Q. And as it turned out, you could only work four-hour shifts, so out of the 12 hours you normally worked it was either the first four hours, the middle four hours, or the last four hours, correct?
> A. Correct.
> Q. And she, [Ms. Fleig], ultimately assigned you for August 10 from 7:00 to 11:00, right?
> A. Yes.
> Q. Which was the first four-hour block?
> A. Correct.
> Q. Was that making life difficult for you, that assignment?
> A. No. I mean they floated me to pass meds so . . .
> Q. Well, I was talking about the time frame, 7:00 to 11:00. Was that making your life difficult to assign you the first chunk of time?
> A: No.

<u>See</u> Famiglietti Transcript pg. 77-78 (attached as Exhibit F). As this colloquy demonstrates, Ms. Fleig accommodated Plaintiffs four-hour limitation by assigning her the 7:00 p.m. to 11:00 p.m. block of time, rather than the 11:00 p.m. to 3:00 a.m. block or the 3:00 a.m. to 7:00 a.m. shift. It cannot seriously be argued that any alleged statement by Ms. Fleig on this scheduling issue is evidence of discriminatory animus in regard to the separate issue of the

termination of Plaintiff's employment. See Danzer v. Norden Systems, Inc., 151 F.3d 50, 56 (2d Cir. 1998) ("Stray remarks, even if made by a decision maker, do not constitute sufficient evidence [to support] a case of employment discrimination.").

In addition to pointing to alleged statements from Ms. Fleig, Plaintiff also points to an alleged statement by Shawn Ladda, an APRN in the Hospital's Occupational Health department, as evidence of discriminatory intent. More specifically, Plaintiff alleges that Ms. Ladda stated that "Angie is going to make this difficult for you" when Plaintiff initially was cleared to return to light-duty work in August 2011. This argument also suffers from several problems. First, Ms. Ladda disputed making this statement. See Ladda Transcript, pg. 26 (attached as Exhibit G). Second, Plaintiff's allegation about this statement is not credible. Plaintiff also never informed Human Resources or anyone else at the Hospital of Ms. Ladda's statement. Despite alleging several statements in her Amended Complaint, Plaintiff did not allege any such statement by Ms. Ladda. Plaintiff also did not identify any such statement in her Interrogatory responses. Instead, Plaintiff only raised this alleged statement for the first time in her own deposition. See Exhibit 3, pg. 108. Her failure to raise this allegation in a timely manner completely undercuts the credibility of her allegation.

More importantly, however, even if that statement was made, it has no bearing on Plaintiff's termination in September 2011 pursuant to the Leave of Absence policy. Plaintiff testified that she Ms. Ladda made this alleged statement in reference to Plaintiff's return to work on light-duty restrictions in August 2011. See Exhibit 3, pg. 77-78. Ms. Fleig did not

attempt to make Plaintiff's return to work difficult.[1] To the contrary, Ms. Fleig assigned Plaintiff the earliest shift possible in another unit that could accommodate her restrictions.

Plaintiff also has not identified any evidence that links this alleged statement to Plaintiff's termination--which occurred after Ms. Fleig discussed Plaintiff's employment in a meeting with representatives from both Human Resources and Occupational Health. See Mem. of Law pg. 8-9. Finally, the Hospital notes that Ms. Ladda was not involved in the termination decision, and it "is well-settled that opinions expressed by co-workers who have no direct involvement in the decision-making processes have no probative value as to the employer's alleged discriminatory intent." DeBiasi v. Charter County of Wayne, 537 F. Supp. 2d 903, 923 (E.D. Mich. 2008). Mr. Bell was the human resources representative who advised Ms. Fleig about the propriety of terminating Ms. Famiglietti, and Plaintiff has not identified any statement or conduct by Mr. Bell that even suggests he held a retaliatory animus toward Plaintiff.

For all of these reasons, none of the alleged statements cited by Plaintiff raise a genuine issue of material fact in regard to whether Plaintiff was terminated "because [she] has filed a claim for workers' compensation benefits or otherwise exercised the rights afforded to [her] pursuant to the provisions of [the Act]." Conn. Gen. Stat. § 31-290a.

## III.    CONCLUSION.

For the reasons set forth above and in the Hospital's Memorandum of Law, the Motion for Summary Judgment should be granted.

---

[1] The Opposition discusses Plaintiff's work on that other unit during her brief shift on August 10, 2011. See Opposition pg. 5. As demonstrated by that discussion, however, Ms. Fleig played no role in Plaintiff's assigned tasks on that unit. In fact, Plaintiff alleges that the individual who assigned her the disputed task said "I don't know who the hell Angie is...." Id. Thus, Ms. Fleig had nothing to do with Plaintiff reinjuring her back while working in that other unit on August 10, 2011.

THE DEFENDANT,
HARTFORD HOSPITAL

By: /s/ Peter J. Murphy
    Peter J. Murphy
    Federal Bar No. ct 26825
    Brenda A. Eckert
    Federal Bar No. ct00021
    Shipman & Goodwin LLP
    One Constitution Plaza
    Hartford, CT 06103
    Tel.: (860) 251-5950
    Fax: (860) 251-5315

## CERTIFICATION OF SERVICE

      I hereby certify that on this 28th day of June 2013, a copy of this **Reply Brief in Support of Motion for Summary Judgment** was filed electronically via operation of the Court's CM/ECF Electronic Filing System.  A Notice of Electronic Filing will be sent by e-mail to all parties via operation of the Court's CM/ECF Electronic Filing System or by mail to anyone unable to accept electronic filing as indicated on the Notice.  Parties may access this filing through the Court's CM/ECF System.

                                                                                _/s/ Peter J. Murphy_
                                                                                 Peter J. Murphy